IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAROL G.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 6:20-cv-01239-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff Carol G. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) finding Plaintiff has performed substantial gainful activity ("SGA"); (2) finding some of Plaintiff's ailments "non-severe"; (3) rejecting Plaintiff's subjective symptom testimony; and (4) discounting medical opinions. Because there is substantial evidence in the record to support the ALJ's findings, and, to the extent the ALJ erred, those errors were harmless, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## **PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff applied for DIB and SSI on March 18, 2013, alleging disability since December 7, 2012. Tr. 180, 593. Both claims were denied initially and upon reconsideration. Tr. 185, 192, 204, 213. Plaintiff requested a hearing before an ALJ and appeared before the Honorable Katherine Weatherly on February 26, 2016. Tr. 1248–1284. ALJ Weatherly issued a fully favorable decision on May 12, 2016. Tr. 214. However, the Appeals Council conducted its own review, vacated the decision, and remanded the case for rehearing. Tr. 226–32. Plaintiff again appeared before ALJ Weatherly on April 25, 2017. Tr. 1209–47. Following this hearing, ALJ Weatherly issued a closed period decision on August 4, 2017, finding Plaintiff disabled from December 7, 2012 to May 18, 2015. Tr. 252. The Appeals Council remanded the case again on May 21, 2018. Tr. 260–63. Plaintiff appeared before the Honorable Mark Triplett on November 18, 2018 and July 8, 2019. Tr. 1135–1207. ALJ Triplett denied Plaintiff's claim in a written decision dated July 31, 2019. Tr. 16–36. Plaintiff sought review from the Appeals Council and was denied on June 9, 2020, rendering ALJ Triplett's decision final. Tr. 1. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 55 years old at the time of her alleged disability onset. *See* tr. 180. Plaintiff has previously worked as a millinery salesperson and a general clerk. Tr. 35. Plaintiff has also worked as an administrative assistant since 2015. Tr. 673. Plaintiff was diagnosed with endometrial and ovarian cancer in early 2013 and underwent treatment that year, including three rounds of chemotherapy. Tr. 30, 182–83. Plaintiff alleges disability due to lasting side effects from chemotherapy, including cognitive impairments, anxiety, cervical degenerative disc disorder, neuropathy, and vertigo. Tr. 180; Pl.'s Br. 8.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that

the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

I. **Plaintiff's Employment**

At step one, an ALJ must determine if a claimant is performing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, regardless of their medical condition, age, or work experience. 20 C.F.R. § 404.1520(b). Here, the ALJ found that Plaintiff engaged in SGA from the second quarter of 2015 to the present. Tr. 19. Plaintiff began working for the Coquille Indian Tribe in 2015. Tr. 559. From 2015 to 2018, when the ALJ issued his decision, the threshold for SGA for non-blind individuals ranged from $1,090 to $1,180 per month. Tr. 23. Beginning in the third quarter of 2015, Plaintiff consistently earned more than twice that amount. *See* tr. 560, 570, 591.

Plaintiff argues that the work is subsidized and thus not SGA. Pl.'s Br. 7, ECF No. 29. Work is subsidized when "the true value of [the] work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid." 20 C.F.R. § 404.1574(a)(2). The value of the subsidy is then subtracted from the earnings to determine if a claimant has performed SGA.

At step one, the burden rests on the Plaintiff to prove that she has not performed SGA. *Bustamante*, 262 F.3d at 953–54. Because Plaintiff's income has been more than twice SGA level, she is presumptively engaged in SGA. *See* 20 C.F.R. § 404.1520(b). Plaintiff failed to carry her burden to show that she is not capable of earning SGA and that her work is subsidized.

ALJ Weatherly sent a work activity questionnaire to Plaintiff's employer asking for detailed information about Plaintiff's job description, actual duties, and accommodations. Tr. 449–53. She also asked Plaintiff's attorney to follow up with Plaintiff's employer. Tr. 448. The questionnaire was not returned. Plaintiff's counsel reported that "the Human Resources Director has refused to complete the questionnaire." Tr. 699. Plaintiff refused to ask her employer for more information. Tr. 699–701.

Without this information from Plaintiff's employer, the ALJ had to rely on the evidence in the record, which included Plaintiff's own assertions, the testimony of a former coworker, opinions from Plaintiff's medical providers, and two performance evaluations. *See* 20 C.F.R. § 404.1516 ("If you do not give us the medical and other evidence that we need and request, we will have to make a decision based on information available in your case.").

Plaintiff's performance evaluations show she has struggled at work. After seven months on the job, Plaintiff received mixed performance ratings on all objectives except interpersonal relationships, where she rated exceptional performance. Tr. 697–98. Plaintiff was described as helpful, quick to correct, and determined to improve. Tr. 698. The reviewer also noted that Plaintiff was "continually learning her job duties" and "needs to strengthen her skills in being able to focus on details of her daily duties." Tr. 698. In February 2018, after nearly three years on the job, Plaintiff's performance evaluation still generally showed mixed performance. Tr. 705–08. Again, Plaintiff scored highly on interpersonal relationships. Tr. 706. However, Plaintiff's knowledge of job duties was rated as unacceptable. Tr. 705. The reviewer noted that Plaintiff had "not grasped the duties of this position in its entirety." Tr. 705. Plaintiff proofed and edited few documents and "has not been able to accomplish these tasks without some assistance and edits

needing to be made." Tr. 705. Plaintiff was placed on a Performance Improvement Plan. Tr. 708. Plaintiff is described as helpful, conscientious, and reliable in her attendance. Tr. 706–08.

A former coworker[2] provided a statement and also testified before ALJ Weatherly. Tr. 677, 1222–1239. The coworker was unable to answer the ALJ's questions about whether Plaintiff was permitted to work at a lower standard of productivity and efficiency or about the actual value of Plaintiff's work. *See* tr. 1229–30. When asked directly by Plaintiff's counsel if Plaintiff "was doing 50 percent of the work product throughout the day, [if] her productivity was 50 percent," the coworker "wouldn't know how [the level of supervision] translates in hours." Tr. 1238. ALJ Triplett gave little weight to this vague testimony. Tr. 22.

Plaintiff's primary care provider, FNP Leann Willis, who has never seen Plaintiff at work, opined that "[a]t this time, [Plaintiff] is not able to do 50% of her job due to her medical condition." Tr. 1084. As will be discussed below, ALJ Triplett gave no weight to this opinion.

Allowing for the most generous interpretation of the evidence, however, Plaintiff argues that she was performing at 50 percent productivity. *See* tr. 700, 703. As the ALJ noted, even if that were true and her current job is considered subsidized employment, the true value of her work would still be above SGA levels. Tr. 23. Because Plaintiff failed to provide sufficient evidence to show that her work was subsidized and because she was still performing at SGA level even if it were subsidized, the ALJ did not err in finding that Plaintiff has engaged in SGA since 2015. This opinion will thus focus on the time period between Plaintiff's alleged onset date, December 7, 2012, and when she began work in 2015.

//

---

[2] While Plaintiff describes this person as a supervisor, Pl.'s Br. 11, the record is clear that this coworker was not a supervisor, but merely trained Plaintiff when she first started working, and had little to no experience working with Plaintiff after that training period of a few months. *See* tr. 1222–24.

II.  **Plaintiff's "severe" and "non-severe" ailments**

At step two, the ALJ found that Plaintiff has severe ailments. Tr. 23. Plaintiff argues that the ALJ erred by finding her neurocognitive loss, anxiety disorder, neuropathy, and vertigo non-severe. Pl.'s Br. 22–23. However, "[s]tep two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). In crafting the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P (S.S.A. July 2, 1996). When an ALJ finds any impairment to be severe, error at step two is harmless, so long as the ALJ properly considers all the alleged impairments in crafting the RFC. *Cf. Buck*, 869 F.3d at 1048 ("[S]tep two was decided in Buck's favor…. He could not possible have been prejudiced.").

Here, the ALJ addressed Plaintiff's neurocognitive loss, anxiety, neuropathy, and vertigo in the opinion. Tr. 29–35. The ALJ properly considered severe and non-severe ailments in crafting the RFC. Even if the ALJ erred here, such error was harmless.

III.  **Plaintiff's Credibility**

Plaintiff argues that the ALJ erred by rejecting Plaintiff's subjective symptom testimony. Pl.'s Br. 24–27. An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533

F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 29. The ALJ found Plaintiff's subjective symptom reports were not supported by the objective medical evidence, including her course of treatment. Tr. 29–31.

In her function report in 2013, Plaintiff alleged that she suffered from chronic fatigue, vertigo, and neuropathy. Tr. 643. She was "chronically exhausted" and had not yet regained her stamina or equilibrium since completing chemotherapy. Tr. 654–55. However, provider notes from this time period and beyond do not fully support Plaintiff's allegations. In November 2013, Plaintiff denied headache, nausea, dizziness, weakness, paresthesia, and vertigo. Tr. 814. Similarly, in December 2013, Plaintiff denied dizziness, weakness, and vertigo. Tr. 832. By August of 2014, Plaintiff was reporting that she felt better, that the paresthesia had improved, and that her treatment related symptoms were lifting. Tr. 902. Again, Plaintiff denied fatigue, nausea, pain, and neuropathy. Tr. 902, 919.

Plaintiff visited medical providers frequently from 2013 to 2015, for calf pain, chest pain, right shoulder pain, neck pain, and isolated incidents of dizziness. Tr. 812, 850, 885, 956, 860. It appears from the medical records that each ailment was short-lived and resolved itself or with conservative treatment. *See, e.g.*, tr. 909, 952. As the ALJ noted, "[t]his level of treatment suggests [Plaintiff's] impairments do not result in significant functional limitation that preclude her from engaging in basic work activity." Tr. 31. Further, Plaintiff consistently presented with normal gait, with no tenderness, and with normal strength and sensation. Tr. 759, 814, 832, 851, 891. Substantial evidence supports the ALJ's finding that Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence.

//
//
//

## IV.    Medical Opinions[3]

*Dr. Claudia Lake and Dr. Scott Alvord*

Plaintiff argues that the ALJ "silently disregarded the opinions of examining but non-treating experts Dr. Lake and Dr. Alvord." Pl.'s Br. 27. This is untrue. The ALJ extensively addressed the opinions of Dr. Lake and Dr. Alvord, granting each opinion some weight. *See* tr. 25–27. Plaintiff then argues that the ALJ failed to give specific and legitimate reasons for partially rejecting their opinions. Pl.'s Reply 10, ECF No. 34. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.*

Dr. Lake performed a consultive psychological examination in March 2016. Tr. 976–80. The ALJ found "Dr. Lake's opinion regarding mild limitation in concentration, persistence, or pace [to be] generally consistent with the record as a whole." Tr. 25. However, Dr. Lake opined that Plaintiff "would have difficulty completing a normal workday [or] workweek without interruptions from a psychiatric condition." Tr. 980. As the ALJ noted, the record simply does not support this degree of limitation; at the time, Plaintiff had been working full time, eight-hour days, five days a week, for nearly a year. Tr. 25, 1179. Plaintiff testified that she never missed work and her performance evaluations show that her attendance was reliable. Tr. 1179, 708.

Dr. Alvord performed another consultive psychological examination in January 2019.[4] Tr. 1100–07. While Dr. Alvord "suspect[ed] a decline from premorbid activities," he also opined

---

[3] Plaintiff's argument that the ALJ did not develop an accurate RFC assumes that the ALJ erred in considering the medical opinions. Because the ALJ did not err, this argument is duplicative and need not be addressed separately.

that Plaintiff's "neurocognitive deficits [were not] so severe as to prevent her from working in some capacity." Tr. 1104. The ALJ gave some weight to Dr. Alvord's opinion, but found that moderate limitation in performing detailed tasks "is not entirely consistent with . . . the objective findings of the in-person evaluation, the longitudinal medical records and objective findings, [Plaintiff's] ongoing work activity, and her documented activities of daily living." Tr. 26. These are specific and legitimate reasons, each supported by substantial evidence. As discussed above, Plaintiff had been working the same job for four years at this point. While Plaintiff certainly struggled, there is not sufficient evidence in the record to show she received accommodations. Dr. Alvord's own examination found Plaintiff's thought process to be intact and her memory adequate, with no issues with attention or concentration. Tr. 1102.

*Dr. Raymond Nolan*

Plaintiff next argues that the ALJ failed to give specific and legitimate reasons for discounting the opinion of Dr. Nolan. Pl.'s Br. 28. Dr. Nolan examined Plaintiff twice, in May 2015 and in April 2016. *See* tr. 890, 986. His opinions on Plaintiff's limitations were similar.[5] Plaintiff presented with normal mental status and normal gait. Tr. 891. She could go from standing to sitting without difficulty. Tr. 891. Her reflexes and grip strength were normal and she could make a full fist. Tr. 891. Dr. Nolan found Plaintiff's reported dizziness to be "of unclear significance." Tr. 892. He noted that the "exam related to her lumbar spine is completely within normal limits so any restrictions . . . would be based on subjective complaints." Tr. 892. With that caveat, Dr. Nolan opined that Plaintiff's limits "might include" only occasional bending,

---

[4] The Court also notes that this examination happened four years after the time period at issue here.
[5] The ALJ found Dr. Nolan's opinions "internally inconsistent" because he limited Plaintiff to lifting 20 pounds on one form and 30 pounds on another. Tr. 34. The Court is less persuaded by that reasoning. However, the ALJ had additional specific and legitimate reasons for partially discounting Dr. Nolan's opinion.

11 – OPINION AND ORDER

twisting, and turning. Tr. 892. He further opined that Plaintiff be limited to lifting or carrying ten pounds frequently and twenty pounds occasionally. Tr. 892.

The ALJ gave some weight to Dr. Nolan's 2015 opinion and limited weight to Dr. Nolan's 2016 opinion, finding them inconsistent with the objective medical evidence. Tr. 33–34. The ALJ agreed that a limitation to light exertion lifting was generally consistent with the medical records. Tr. 33. However, as the ALJ noted, Dr. Nolan's limitations on sitting, standing, walking, climbing, and crawling were not entirely consistent with his own examinations and the other medical evidence. "Upon examination, [Plaintiff] had normal gait, strength, sensation, and range of motion with an isolated instance of mild swelling in January 2016." Tr. 33. The ALJ provided a specific and legitimate reason, supported by substantial evidence, for partially discounting Dr. Nolan's opinions.

*Leanne Willis, FNP*

Plaintiff finally argues that the ALJ failed to provide germane reasons for rejecting the opinion of NP Willis. As a nurse practitioner, NP Willis's opinion is considered an "other" medical source statement under the regulations that applied in this case. 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ must provide a germane basis for discounting "other" medical source statements. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In a statement from February 2016, NP Willis asserted that Plaintiff has "consistently had problems with anxiety, panic, neuropathy, dizziness, and numbness," causing headaches and back pain, and making it difficult for Plaintiff to sleep. Tr. 975. NP Willis asserts that these problems have been ongoing and have not resolved. Tr. 975. She opined that Plaintiff was

"temporarily disabled" during the period when she was not working. Tr. 975. In a May 2017 statement, NP Willis opined that Plaintiff was only able to do fifty percent of her job. Tr. 1084.

The ALJ gave some weight to NP Willis's opinions. Tr. 32. He found her opinions to be internally inconsistent, as NP Willis opined Plaintiff was only "temporarily disabled" in 2016, but later opined that she was currently disabled. Tr. 32. The ALJ also noted that NP Willis "provided no explanation or support for her discrepant opinions" and that the record did not show any evidence of Plaintiff's conditions or symptoms worsening. Tr. 32. NP Willis's statements were also not consistent with the objective medical evidence, as the ALJ noted. Tr. 32. Contrary to NP Willis's statement, at other medical visits in 2013 to 2015, Plaintiff repeatedly denied experiencing headaches, nausea, dizziness, and neuropathy. Tr. 814, 832, 902, 919. The ALJ provided several germane bases, each supported by substantial evidence, for only giving some weight to NP Willis's opinion.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 21st day of March, 2022.

                                                s/ Michael J. McShane
                                                Michael J. McShane
                                                United States District Judge